```
                                          USDC SDNY
                                          DOCUMENT
                                          ELECTRONICALLY FILED
                                          DOC #: _____
                                          DATE FILED: Nov. 16, 2011
```

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
------------------------------------X
QUALITY SERVICE GROUP,              :
                                    :
           <u>Plaintiff</u>,             :
                                    :   No. 10 Civ. 9090 (JFK)
     -against-                      :
                                    :   **OPINION AND ORDER**
LJMJR CORP., BLUE MARTINI, BLUE     :
MARTINI OF FISHKILL, INC., FRANK    :
ANTHONY TAYLOR, LOUIS               :
MONGELLI, JR., JACQUELYN A.         :
MONGELLI, WILLIAM EARL, BM OF       :
WALLKILL, INC., HANS TAYLOR, AND    :
BARBARA TAYLOR,                     :
                                    :
           <u>Defendants</u>.            :
                                    :
------------------------------------X

APPEARANCES

     FOR PLAINTIFF QUALITY SERVICE GROUP:
     Gordon E. Troy
     Law Office of Gordon E. R. Troy, PC

     FOR DEFENDANTS:
     Jura Christine Zibas
     Scott Smedresman
     Wilson Elser Moskowitz Edelman & Dicker LLP

     Thomas Catalano
     Lester, Schwab, Katz and Dwyer LLP

**JOHN F. KEENAN, United States District Judge:**

     Before the Court is Plaintiff Quality Service Group's ("Plaintiff" or "QSG") motion to dismiss the first, second, and third counterclaims brought by all Defendants. For the reasons stated below, the motion is granted in part and denied in part.

## I. Background

### A. The Parties

The following allegations are drawn from the Amended Complaint, unless otherwise noted. QSG is a Florida limited liability company with its primary place of business in West Palm Beach. QSG licenses and operates a chain of restaurants, bars, and nightclubs called the Blue Martini. Plaintiff owns a trademark for Blue Martini, which consists of the name "Blue Martini" and a logo of a stylized martini glass with a swirling olive. QSG's Blue Martini establishments have a specific interior design that purportedly forms its trade dress.

Defendant LJMJR is a New York corporation doing business in Newburgh. Defendant Louis Mongelli, Jr. is the CEO of LJMJR. LJMJR operates two restaurants, bars, and lounges also called the Blue Martini, one in Newburgh and one in Middletown, New York. LJMJR's Blue Martini establishments are not a part of QSG's chain. Defendants Frank Anthony Taylor and Jacquelyn A. Mongelli hold the liquor license for the Newburgh Blue Martini. Defendant Blue Martini of Fishkill owns the Middletown Blue Martini. Defendants Hans Taylor and Barbara Taylor hold the liquor license for the Middletown Blue Martini. Defendant William Earl is the registered owner of the internet domain name bluemartininy.com, a website that advertises the Newburgh and Middletown Blue Martini establishments. Defendant Blue Martini

is the registered owner of the internet domain name www.bluemartininewyork.com, which also advertises the Newburgh and Middletown Blue Martini establishments.

Plaintiff alleges that Defendants have infringed the Blue Martini trademark by using the name, a substantially similar logo, and similar interior design to imply to the public that the Newburgh and Middletown establishments are part of QSG's chain when they are not.

### B. Trademarks

Plaintiff's initial application to the United States Patent and Trademark Office ("PTO") for a trademark of its logo – the stylized martini glass – was denied because it resembled the logo for another restaurant, the "Bigg Blue Martini," and posed a likelihood of confusion. In response, Plaintiff successfully argued to the PTO that the two logos were different enough so the consumers would not confuse the Blue Martini for the "Bigg Blue Martini" establishment. The trademark for the Blue Martini logo was granted in March 2004 ("'726 mark"). (Def. Ans. ¶ 12). The '726 mark contains a disclaimer: "No claim is made to the exclusive right to use 'Blue Martini', apart from the mark as shown." (Id. ¶ 61).

In May 2007, Plaintiff applied for a word mark for "Blue Martini" on the grounds that the words had "become distinctive of the goods/services through the applicant's substantially

3

exclusive and continuous use in commerce for at least the five years immediately before the date of this [application]." Accompanying the application was an affidavit from Mark E. Vasu, Plaintiff's Founder and Managing Member ("Vasu Affidavit"). In the affidavit, Vasu stated that his company owns "6 Blue Martini® clubs and [has] leases for opening an additional four Blue Martini® clubs in five states." (Vasu Aff. ¶ 7). The word mark was approved in 2007 ("'058 mark").

### C. Instant Motion

Defendants have asserted counterclaims for cancellation of the '058 Mark on the grounds that (1) Plaintiff misused the registration symbol; (2) Plaintiff attained the mark through fraud on the PTO; and (3) the '058 mark application should have been denied because it is confusingly similar to the already-issued mark for "Bigg Blue Martini." Plaintiff has moved under Federal Rule of Civil Procedure 12(c) for judgment as a matter of law.

## II. Analysis

### A. Legal Standard

Rule 12(c) of the Federal Rules of Civil Procedure provides that "[a]fter the pleadings are closed-but early enough not to delay trial-a party may move for judgment on the pleadings." The standard for granting a Rule 12(c) motion for judgment on the pleadings is identical to that of a Rule 12(b)(6) motion to

4

dismiss the complaint for failure to state a claim upon which relief may be granted. Cleveland v. Caplaw Enters., 448 F.3d 518, 521 (2d Cir. 2006). In analyzing the instant motion, the court must accept the counterclaim's factual allegations as true and draw all inferences in the Defendants' favor. Id. The court's function "is merely to assess the legal feasibility of the complaint, not to assay the weight of the evidence which might be offered in support thereof." Geisler v. Petrocelli, 616 F.2d 636, 639 (2d Cir. 1980). Therefore, a claim will be dismissed where it fails to set forth sufficient facts to state a claim for relief that is "plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544 (2007).

Because the counterclaims deal with the standards for obtaining a word mark, a brief overview of trademark law is instructive. The PTO manages the Principal Register cataloging marks that are determined to be distinctive. As manager of the Register, the PTO also fields applications from trademark owners who seek to have their marks registered. If the PTO finds that the mark is distinctive, it is eligible for registration on the Principal Register. 15 U.S.C. § 1052.

Section 2(e) of the Lanham Act, 15 U.S.C. § 1052 requires the PTO to deny registration if a mark is descriptive, which means that the mark "conveys an immediate idea of the ingredients, qualities, or characteristics of the goods."

Bernard v. Commerce Drug Co., 964 F.2d 1338, 1341 (2d Cir. 1992). Terms held to be descriptive include "Apple Raisin Crisp" for breakfast cereal, see Gen. Mills, Inc. v. Kellogg Co., 824 F.2d 622, 625 (8th Cir. 1987) and "The Sports Authority" for a sporting goods store, see Sports Authority, Inc. v. Prime Hospitality Corp., 89 F.3d 955 (2d Cir. 1996).

However, nothing in the Lanham Act precludes a mark from later acquiring distinctiveness, or secondary meaning, such that a once descriptive mark can be registered. Jewish Sephardic Yellow Pages, Ltd. v. DAG Media, Inc., 478 F. Supp. 2d 340, 347 (E.D.N.Y. 2007) (stating that a descriptive mark becomes distinctive when the public has come to associate the mark primarily with its user). Prima facie evidence that the mark has become distinctive includes proof of substantially exclusive and continuous use of the mark applied to the applicant's goods for five years preceding the application. Abercrombie & Fitch Co. v. Hunting World, Inc., 537 F. 2d 4, 10 (2d Cir. 1976). See Official Airline Guides, Inc. v. Goss, 6 F.3d 1385 (9th Cir. 1993) (noting that the words "Travel Planner," once disclaimed by plaintiff as descriptive, might later attain distinctiveness as a result of [plaintiff's] 'substantially exclusive and continuous use' in interstate commerce for more than five years).

6

### B. First Counterclaim

Defendants allege that the '058 mark should be cancelled because Plaintiff misused the registration symbol in its application, conduct that gives rise to the assumption that it likely misused it in other instances. (Def. Ans. ¶¶ 60-66). For the reasons stated below, Defendants' first counterclaim is dismissed.

### 1. Legal Standard

"The improper use of a registration notice in connection with an unregistered mark, if done with intent to deceive the purchasing public or others in the trade into believing that the mark is registered, is a ground for denying the registration of an otherwise registrable mark." <u>Copelands' Enters., Inc. v. CNV, Inc.</u>, 945 F.2d 1563, 1566 (Fed. Cir. 1991). Therefore, Defendants must demonstrate that Plaintiff misused the registration symbol in a deliberate attempt to deceive the public or others in the trade.

### 2. Application

Defendants state that in the Vasu Affidavit accompanying the application for the '058 word mark, Plaintiff wrote that it owned the mark "Blue Martini®." Defendants assert that Plaintiff was exaggerating its ownership of the phrase "Blue Martini." At the time of the '058 mark application, the only mark Plaintiff had registered was its logo, the '726 mark .

Thus, Defendants state, QSG was not entitled to attach the registration symbol to anything but the logo itself. (Def. Mem. at 6).

Essentially, Defendants have alleged that in the application for a word mark for "Blue Martini," QSG attempted to dupe the PTO into believing that it already owned the mark for "Blue Martini."  When viewed in context, it is obvious that Plaintiff meant the registration symbol to reference the logo. Had the PTO interpreted the registration symbol as referring to the words "Blue Martini," it surely would have requested clarification as to why Plaintiff was submitting an application for a mark it already owned.

Even if the use of the registration symbol were improper, Defendants have not proffered any reason to believe that Plaintiff attached the registration symbol next to "Blue Martini" with intent to deceive the PTO or the public.  As a result, there are no grounds for the inference that QSG might have misused the registration symbol in other instances. Discovery into Plaintiff's other uses of the symbol is therefore not warranted. See Elizabeth Arden Sales Corp. v. Faberge, Inc., 304 F.2d 891 (YEAR) (finding that applicant did not misuse registration symbol where party opposing registration "failed to produce any evidence of an intent . . . to deceive the public by such marking").

### C. Second Counterclaim

Defendants' second counterclaim seeks cancellation of the '058 mark on the grounds that Plaintiff obtained the '058 mark based on a fraudulent application submitted to the PTO. (Def. Ans. ¶¶ 67-88).

### 1. Legal Standard

A third party may petition to cancel a registered trademark on the ground that the "registration was obtained fraudulently." 15 U.S.C. § 1064(3); In re Bose Corp., 580 F.3d 1240, 1243 (Fed. Cir. 2009). "Fraud in procuring a trademark occurs when an applicant knowingly makes false, material representations of fact in connection with his application." Id. at 1243.

A third party seeking cancellation of a trademark based upon fraud in the application "bears a heavy burden." Id. In establishing fraud, the party must identify a deliberate attempt by the registrant to mislead the PTO. "Merely making a false statement is not sufficient to cancel a mark." L.D. Kichler Co. v. Davoil Inc., 192 F.3d 1349, 1351 (Fed. Cir. 1999). Indeed, an error or inadvertent misstatement is insufficient to establish fraud. Id.

In addition to demonstrating intent to deceive, the party seeking cancellation must also establish that the deception involved a misstatement of a material fact. A material fact is "one that would have affected the PTO's action on the

9

applications." <u>Orient Express Trading Co. v. Federated Dep't Stores, Inc.</u>, 842 F.2d 650, 653 (2d Cir. 1988).

### 2. Application

Defendants proffer two arguments in favor of the counterclaim for cancellation of the '058 mark on the basis of fraud.  First, they allege that Plaintiff's application for the '058 mark included statements that contradicted its position in the '726 mark application.  Specifically, Defendants argue, in the '726 mark application, QSG admitted that the words "Blue Martini" were "descriptive," pointing to other bars and restaurants using that phrase.  Defendants also note that the '726 mark required QSG to disclaim its interest anything but the Blue Martini logo.  In its '058 mark application, QSG argued that it had made "a prima facie showing of distinctiveness." (Vasu Aff. ¶ 7).  Second, Defendants assert that Plaintiff erroneously stated it had leases for and plans to open "four Blue Martini clubs in five states."  In fact, Defendants argue, Plaintiff did business in only one state:  Florida. (Def. Ans. ¶¶ 76-80).

### a. '058 Mark Application

First, the Court will address whether Plaintiff could apply for the Blue Martini word mark after previously admitting to the PTO that "Blue Martini" was used in commerce by other bars and restaurants.  In evaluating a word mark application, the PTO

10

considers whether the mark has become distinctive through the words' "substantially exclusive and continuous use in commerce." 15 U.S.C. § 1052(f).  Therefore, the existence of other bars bearing the name "Blue Martini" does not militate against the granting of a word mark, so long as the party seeking a word mark can demonstrate substantial exclusivity.  As a result, the only remaining question is whether QSG could submit the '058 mark application having represented that "Blue Martini" was descriptive four years earlier in the '726 mark application.

QSG certainly could have characterized the phrase "Blue Martini" as descriptive in the logo application in 2003 and then argued that it had attained distinctiveness in 2007.  The Lanham Act's five-year "continuous use" requirement contemplates that words remain descriptive until five years have elapsed.  After five years, words immediately convert into distinctive, and eligible for registration. See Official Airline Guides, Inc., 6 F.3d at 1385.

Further, Defendants' argument that Plaintiff's disclaimer of the words "Blue Martini" in connection with the '726 mark is inapplicable here.  Under 15 U.S.C. § 1056(b), prior disclaimers do not bar Plaintiff from establishing that the "disclaimed matter [is] or [has] become distinctive of his goods or services."  Nor does the registration of the Blue Martini logo require this Court to conclude that the mark is "merely

11

descriptive." In re Nat'l Data Corp., 753 F.2d 1056, 1059 (Fed. Cir. 1985). Therefore, Defendants have not shown that the '058 mark could, as a matter of law, be cancelled based upon the '726 mark application.

### b. Paragraph 7 of the Vasu Affidavit

Next, the Court will address Defendants' contention that Plaintiff fraudulently misrepresented the locations in which it operated Blue Martini clubs. Paragraph 7 of the Vasu Affidavit, appended to the '058 mark application, discusses Plaintiff's plans to expand the Blue Martini chain to include an "additional four Blue Martini® clubs in five states." Ultimately, Plaintiff opened clubs in only two additional states. (Pl. Ans. ¶ 99).

In addition to the logical impossibility of opening four clubs in five states, the statement does not have any legal significance. Paragraph 7 addresses Plaintiff's plans for using the words "Blue Martini" in commerce. Under the Lanham Act, in determining whether a mark is distinctive, the PTO can only consider use in commerce "for the five years before the date on which the claim of distinctiveness is made." 15 U.S.C. 1052(f). Even accepting Defendants' allegation that Plaintiff deliberately misled the PTO in asserting that it had leases for additional locations, the PTO's decision to grant the word mark would not be affected. See In re Shell Oil Co., 992 F.2d 1204, 1207 (Fed. Cir. 1993) (rejecting the notion that "planned future

12

marketing" has bearing on whether the mark is in use in commerce). Therefore, Defendants' counterclaim fails as a matter of law.

### C. Third Counterclaim

Defendants' third ground for cancellation of the '058 registration is that it should have been denied by the PTO on the basis of confusing similarity with the already-granted registration for "Bigg Blue Martini." (Def. Ans. ¶¶ 104-06).

### 1. Legal Standard

Under the Lanham Act, a party "who believes that he is or will be damaged . . . by the registration of a mark on the principal register" may petition to cancel the registration under 15 U.S.C. § 1064. For a court to grant cancellation of the registration, the petitioning party must demonstrate that it has standing and that valid grounds for cancellation exist. <u>Cunningham v. Laser Golf Corp.</u>, 222 F.3d 943, 945, (Fed. Cir. 2000) ("Standing . . . requires only that the party seeking cancellation believe that it is likely to be damaged by the registration."). A party seeking cancellation must satisfy two judicially-created requirements: the petitioner must show (1) a "real interest" in the proceeding and (2) a reasonable basis for the belief that the challenged mark has caused or will cause damage. <u>Ritchie v. Simpson</u>, 170 F.3d 1092, 1095 (Fed. Cir. 1999); <u>Int'l Order of Job's Daughters v. Lindeburg & Co.</u>, 727

F.2d 1087, 1092 (Fed. Cir. 1984).  "To show a real interest, the petitioner must "have a direct and personal stake in the outcome" of the cancellation. Id. Standing will not be granted to "'mere intermeddlers' who do not raise a real controversy. . . ." Ritchie, 170 F.3d at 1095.

If a party has standing, it may move for cancellation of a trademark within five years of its issuance on any grounds that would have been valid for the PTO to have denied registration in the first instance. See Cunningham, 222 F.3d at 946.  There is a "presumption of validity" that attaches to the issuance of a trademark registration.  This rebuttable presumption merely shifts the burden of persuasion to the party seeking cancellation, or the alleged infringer.  See Cold War Museum, Inc. v. Cold War Air Museum, 586 F.3d 1352, 1357 (Fed. Cir. 2009) ("[T]he party seeking cancellation also bears the "burden to establish a prima facie case," that the registration is invalid.").

Under Section 2(d) of the Lanham Act, cancellation of a registration for a trademark is appropriate if there is a likelihood of confusion between that trademark and another mark registered in the PTO. 15 U.S.C. § 1052(d).  To determine whether there is a likelihood of confusion, a court must balance the eight factors set forth by the Second Circuit in Polaroid Corporation v. Polarad Elecs. Corp., 287 F.2d 492 (2d Cir.

1961), which are: (1) strength of the trademark; (2) similarity of the marks; (3) proximity of the products and their competitiveness with one another; (4) evidence that the senior user may "bridge the gap" by developing a product for sale in the market of the alleged infringer's product; (5) evidence of actual consumer confusion; (6) evidence that the imitative mark was adopted in bad faith; (7) respective quality of the products; and (8) sophistication of consumers in the relevant market. <u>Star Indus., Inc. v. Bacardi & Co., Ltd.</u>, 412 F.3d 373, 384 (2d Cir. 2005).

### 2. Application

Before reaching the merits of this counterclaim, the Court must first determine whether Defendants have standing to bring it.  Plaintiff's argument that Defendants may not bring this cancellation claim on behalf of a third party (Bigg Blue Martini) is misplaced.  As a party to litigation brought by Plaintiff, Defendants will necessarily be damaged if the '058 mark is not cancelled.  Defendants also have a real interest in this cancellation, as they have a personal stake in the outcome of the cancellation.  Therefore, Defendants have standing to assert this counterclaim. <u>See</u> <u>Aluminum Fabricating Co. of Pittsburgh v. Season-All Window Corp.</u>, 259 F.2d  314 (2d Cir. 1958) (entertaining defendant's claim for trademark cancellation based upon a third party's prior use of that trademark).

15

Next, the Court must evaluate whether Defendants' claim that the '058 mark should be cancelled on the basis of confusing similarity with Bigg Blue Martini is facially sufficient to withstand a motion to dismiss.  While the Court acknowledges the sparse factual content in the Defendants' counterclaim, Defendants have demonstrated that even the PTO recognized similarities between "Blue Martini" and "Bigg Blue Martini." Such similarities are grounds upon which the PTO could have initially denied the '058 mark. Nikon, Inc. v. Ikon Corp., 803 F. Supp. 910 (S.D.N.Y. 1992) (detailing that the PTO denied defendant's application to trademark "Ikon" because of confusing similarity to an already-registered third party mark, "Zeiss Ikon").

Moreover, comparing "Blue Martini" and "Bigg Blue Martini" would be a fact-specific inquiry that is inappropriate for determination on a motion for judgment on their pleadings. See Frito Lay, Inc. v. The Bachman Co., 704 F. Supp. 432 (S.D.N.Y. 1989) (denying motion to dismiss defendant's counterclaim for cancellation of the trademark, on the grounds that "genuine factual issues" concerning the similarity of the products remains); see also Courtenay Commc'ns Corp. v. Hall, 334 F.3d 210, 215 (2d Cir. 2003) ("It is usually true that the classification of a mark is a factual question, and that the question turns on how the purchasing public views the mark.  The

16

pleadings and documents necessarily relied upon by plaintiff's complaint, which were all that the district court could rightfully consider in deciding the motion to dismiss for failure to state a claim, are insufficient for determining the critical fact of how the public views [a] mark."). Thus, Plaintiff's 12(c) motion on Defendants' third counterclaim is denied.

### III. Conclusion

For the foregoing reasons, Plaintiff's motion for partial judgment on the pleadings is granted as to the first and second counterclaims and denied as to the third counterclaim. The parties are directed to appear before the Court at a status conference on December 20, 2011 at 10:30 a.m.

**SO ORDERED.**

Dated:     New York, New York
           November /2 , 2011

                                    _____
                                         JOHN F. KEENAN
                                    United States District Judge

17